John Craige McGRATH, Independent Executor of the Estate of J. P. McGrath, Jr., Deceased, Appellant,

v.

SAN ANTONIO AND FARMERS DAIRIES, a co-partnership, Appellee.

No. 5743.

Court of Civil Appeals of Texas.

El Paso.

Dec. 8, 1965.

Rehearing Denied Jan. 26, 1966.

Brewster & Hoy, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, James L. Gallagher, El Paso, for appellee.

FRASER, Chief Justice.

This is a summary judgment case wherein the trial court granted the motion of appellee, who was plaintiff below. Appellee brought its suit against appellant arising out of and based on a judgment rendered in another district court of El Paso County in a suit entitled Samuel G. Nicolosi, et ux, Plaintiffs, vs. J. P. McGrath, Jr., Defendant, No. 100564. This particular lawsuit was between two former partners and involved an insurance agency business. The judgment in the former suit incorporated the report of a receiver who had been appointed to take over the affairs of the partnership. In this report, the receiver set forth the amount that each partner was entitled to, or owned, in the partnership, and also set out a long list of customer credit balances, which is referred to as Schedule No. 12 of the Third Accounting of the Receiver. The plaintiff-appellee based its motion for summary judgment in this case largely on the fact that the prior judgment had become final, and the court in said judgment had approved and recognized the findings of the Receiver, one of which was that the appellee had a customer credit balance due it of $1,263.87. The finality of this judgment is not contested, but we think that the wording of a part of said judgment is necessary, as it is apparently the main background of plaintiff-appellee's claim. The court in the other case said, inter alia, as follows:

"And it being shown to the Court that R. A. HANLEY, said Receiver pursuant to the Order of this Court, did on the 30th day of March, 1962, sell to ROBERT H. BROWN for the sum of $14,783.00 cash, all of the assets of the insurance agency known as McGrath-Nicolosi & Company and that said Receiver has duly prepared and filed with this Court his final account, the same being designated as the Third Accounting of Receiver, said account is hereby in all things approved and ORDERED filed among the papers of this cause as part of the record thereof and is hereby incorporated in this Judgment by reference as fully as though set out at length herein and said Receiver is hereby ORDERED to make disbursement in accordance with said accounting and to pay the indebtedness of Mc-Grath-Nicolosi & Company as reflected by said accounting *but* the Customers credit balances as shown by Schedule No. 12 of said Third Accounting of Receiver, the same being in the sum of $5,141.82 are hereby ORDERED held in trust by J. P. McGRATH, JR., to be paid to the customers reflected by said Schedule No. 12 in the amount indicated thereby by the said J. P. McGRATH, JR. and the said SAMUEL G. NICO-LOSI and wife, FLORENCE NICO-LOSI, are hereby relieved of any and all liability for payment of same and the said J. P. McGRATH, JR., shall hold and save them harmless from any claims for said sums of money or any part thereof up to the aforesaid sum of $5,141.82." (Emphasis ours.)

Appellee maintained in the lower court that this was a final adjudication to the effect that the trustee there, who is defendant here, was ordered to hold the sum of money mentioned therein and to pay it out in accordance with Schedule 12 hereinabove mentioned. Appellee, as plaintiff below, filed its suit against the defendant demanding payment of this customer credit balance of $1,263.87, and stated that it was due

because of the prior judgment in the other case which had become final.

The defendant-appellant filed his answer in which he sets up and alleges, among other things, that there existed an offset or counter-claim in his favor against the plaintiff in this case. He also urges this matter as a defense as well. The information applicable thereto is found in the pleadings and in the answers to the interrogatories and/or admissions contained within the record now before us. In addition, this record contains an affidavit by J. P. Mc-Grath, Jr., who was a partner in the business and a party in the former lawsuit (No. 100564). We believe the admissions and statements in answer to the interrogatories, as well as the opposing affidavit by Mr. J. P. McGrath, Jr., are sufficient as far as the defendant is concerned, to establish the possible existence of a definite counter-claim or offset requiring exploration or determination as a material fact issue. His pleadings, opposing affidavit, and the admissions and answers to interrogatories show that the defendant claimed, and claims here, that Mr. Nicolosi, one of the parties to the other lawsuit and a former partner involved in the prior lawsuit, had sent an invoice, letter or bill to the appellee company on the letterhead of McGrath-Nicolosi & Company for a sum of money, and Mr. Nicolosi had written in longhand across the top of the invoice, "Make out to Samuel G. Nicolsi and hold". The word "hold" is underlined three times. Subsequently Mr. Nicolosi picked up the checks from a Mr. Lembo, described as comptroller of the plaintiff, and eventually cashed them. It was alleged that the Lembos and Nicolosis were bowling, social and party friends and frequently entertained each other. Appellant also sets out in this narrative-type affidavit that the close friendship between Lembo and Nicolosi was the reason that Lembo delivered to Nicolosi the two checks totaling $1,049.51. It is apparently uncontroverted that Mr. Nicolosi and his wife cashed these checks and used the money for their own purposes, and

that none of it was ever actually received by the other partner or the partnership. There is much controversy in the record before us as to whether the appellant successfully controverted, or could controvert, appellee's demand for a summary judgment.

In the matter before us the court first granted summary judgment to appellee; then, approximately a month or so later, granted it a nunc pro tunc judgment; and still later granted an application and issued an order for the severance of appellant's counter-claim, or claim or offset, from this summary judgment case.

▆ We have reached the conclusion that this matter was not, in the final analysis, a proper subject for disposition by summary judgment. As we have stated above it appears not only from the pleadings, but from the admissions and opposing affidavit that the appellant was very stoutly asserting an offset, counter-claim or defense based on what he claims was the wrongful act of appellee in making out the checks totaling $1,049.51 to Mr. Nicolosi, and delivering them to him. Appellant urges and argues that this was a knowing act on the part of appellee's comptroller or agent, based on his knowledge of the facts and perhaps induced by his friendship for Mr. Nicolosi. There is no doubt but that the checks were issued to and paid and used by Mr. Nicolosi, and this amount was apparently used and considered in making up the figure of $1,263.87 that was set up by the Receiver as a customer credit to appellee. In other words, appellee apparently added this figure of $1,049.51 to other credits claimed by it to make the total of the aforesaid figures of $1,263.87. This, appellant claims, is wrong because he alleges this payment was improperly conceived and executed by the appellee's agent and Mr. Nicolosi, and the partnership did not receive it as such, and it should not be used as an item entitling the appellee to credit in an amount equal to that paid Mr. Nicolosi. We believe these allegations, statements, pleadings, admissions, and the opposing affidavit, all

found in the record, establish the existence of a material fact question—to-wit, the appellant's claim of offset, defense or counter-claim, and whether it should be allowed and, if so, in what amount. Appellee urges and argues that this matter should not be a part of this summary judgment case, but that it should be tried separately because of the nature of the allegations (mainly, that appellee's suit was based on an item contained in a final judgment), and because the court severed it from this case which has resulted in a summary judgment.

■ Partial summary judgments have always been considered interlocutory and therefore not appealable until the entire case is disposed of. The record, left as it is, calls for two different lawsuits and two different judgments. In other words, if the appellee is successful here, and the appellant is successful in the counter-claim or offset—which the trial court severed—then there would be two judgments with which to deal, two cost bills and two problems of interest and, of course, the rule against unnecessary multiplicity of suits appears. The appellee itself, in its application for judgment nunc pro tunc, points out that the court did not consider, nor did its order purport in any way to affect, the defendant's cross-action against plaintiff and third party Nicolosi, and that therefore the order granting the summary judgment did not truly and correctly record the court's decree because no mention was made that the defendant was left free to assert his claim by way of cross-action against plaintiff and Nicolosi. The order of the court, in addition to other matters, follows this motion by plaintiff below and describes its order as a partial summary judgment. The court further recognizes the existence of appellant's claim by its order of severance. The appellee states in its motion for such severance that defendant's cross-action over and against plaintiff is a separate and distinct cause of action, and that plaintiff's claim and defendant's cross-action might be properly tried as if it were the only claim in

controversy. The court's order follows, again, the language of appellant's motion, and in his order of severance orders the defendant's cross-action docketed as a separate suit against plaintiff and the Nicolosis.

■ The rules governing the matter of summary judgment have been universally accepted as well set out in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, and the many cases following it. In that and the other cases, it is carefully enunciated and set forth that Rule 166–A, which deals with summary judgments, was never intended to deprive anyone of his day in court or a hearing on a properly presented claim. We think that this matter is one that should not be severed and should not be disposed of, even partially, by a summary judgment. Defendant has raised this question on his pleadings and replies to the interrogatories as a *defense* as well as a set-off or counter-claim. It will be noted on reading the provisions of the judgment in the prior (and now final) decision that the court there *ordered* Mr. McGrath to pay some partnership bills and *ordered* him to *receive and hold,* as trustee, the sum of $5,141.82 "to be paid to the customers reflected by said Schedule No. 12 in the amounts indicated". While, as we have stated before, this record is not replete with informative affidavits, nevertheless we feel the opposing affidavit and the admissions and answers to interrogatories are adequate to present an answer in defense to appellee's motion for summary judgment. The brief of appellee sets forth a quotation from Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948, wherein the court states that when facts entitling the moving party to prevail have been established by affidavits, depositions, testimony or admissions, the motion for summary judgment will not be denied merely because the opposite party alleged matters which might require a different judgment. While this case is cited by the appellee in defense of its position, we think that it works both ways; that, on the basis

of this opinion in 1960 by the Texas Supreme Court, by the same token facts defeating or preventing a summary judgment can be established by the same method, to-wit, admissions, etc.

We feel that the court itself, and the appellee, both in the motions for judgment nunc pro tunc and order of severance and the wording of the judgment and order, set up a recognition that there did exist a fact issue, which we do not feel was properly severable from the lawsuit. We think justice would be better served here if a trial was had on the merits wherein the appellee can assert its claim and the appellant can present his cross-action and/or offset. While this matter has not been easy of decision, we feel that the appellant has presented adequate evidence to require consideration of his counter-claim or offset along with appellee's demand for the payment of the customer credit sum of $1,263.-87. The court can hear both sides on a trial of the merits and then determine who owes who, and how much; and, in our opinion, this is the better and the legal way to dispose of this controversy, rather than splitting it into at least two different lawsuits.

Therefore, without itemizing or referring in particular to any one of appellant's points of error, we hold that appellant has successfully indicated that the trial court was in error in granting summary judgment to appellee and in severing appellant's counter-claim to be tried as a separate case. This holding is based on the various matters presented by appellant in his points of error, and we do not deem it necessary to itemize or separate any particular point of error, but rather to say that appellant, in his seven points of error, has indicated to us that the trial court was in error in granting summary judgment and the order of severance.

For these reasons the judgment of the trial court is reversed and the cause remanded.